# Fidelity Insurance Trust and Safe Deposit Company et al. *versus* City of Scranton.

1. The Act of March 27th 1865 (P. L. 57), which authorizes "any borrower" to contract "for the payment, in addition to interest, of any and all sums assessed or to be assessed for taxes upon the loan or its interest," applies as well to municipal corporations as to other corporations and individuals.

2. The city of Scranton in June 1873 issued coupon bonds, in pursuance of certain Acts of Assembly and a joint resolution of councils, with interest thereon payable "free of taxes for state, county, or, local purposes:" *Held,* that the city had power to issue said bonds, and was liable to pay the interest coupons without deduction for state taxes.

February 20th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN and CLARK, JJ., absent.

ERROR to the Court of Common Pleas of *Lackawanna county :* Of July Term 1882, No. 124.

Amicable action of debt and case stated, between the Fidelity Insurance Trust and Safe Deposit Company and John Welsh, trustees under the will of Dr. Samuel Jackson deceased, plaintiffs, and the city of Scranton, defendant. The case was submitted by agreement to the decision of the court, as under the provisions of the Act of April 22d 1874.

[Fidelity, &c. Deposit Co. *v.* City of Scranton.]

The material facts were found by HAND, J., to be as follows :—

The plaintiffs claimed to recover the sum of $70, being the amount of two coupons, on a certain bond issued by the city of Scranton, with interest payable " free of taxes for state, county or local purposes."

The defendant claimed to deduct therefrom certain taxes paid to the state, to wit (1) the sum of $9, paid since notice to the plaintiff thereof ; (2) the sum of $18, for taxes, defendants have been compelled to pay the state, due prior to 1878, but not deducted from coupons already paid on this bond, with no notice at the time of payment of such claims. The city did not pay the latter to the state until suit brought, February 1st 1878.

The bond, which was duly transferred by indorsements to the plaintiffs, was in the following form ;

$1000.          CONSOLIDATED LOAN.          $1000.

UNITED STATES OF AMERICA, STATE OF PENNSYLVANIA.

Seven per cent bond, payable twenty years from date.

THE CITY OF [No. 78.] SCRANTON.

KNOW ALL MEN BY THESE PRESENTS, That the city of Scranton is indebted, and is hereby held and firmly bound unto the Fidelity Insurance, Trust and Safe Deposit Company, or assigns, in the sum of one thousand dollars, lawful money of the United States, payable twenty years from the date hereof at the First National Bank of Scranton, in the city of Scranton, with interest thereon at the rate of seven per centum per annum from the first day of June, A. D. 1873, payable semi annually on the first days of December and June of each year, free of taxes for state, county or local purposes. By Act of Assembly of March 19th, A. D. 1873, this bond is made a legal investment for all moneys held by any person or corporation in trust, or in a fiduciary capacity, and is issued in pursuance of an Act of Assembly of the state of Pennsylvania, approved May 7th, A. D. 1870, and a supplement thereto, approved March 19th, A. D. 1873, and a joint resolution of the councils of the city of Scranton, approved May 19th 1873, for issuing bonds and consolidating the city debt, and is transferable on the books of the commissioners of the city of Scranton, attested by their clerk and not otherwise.

In witness whereof, and in pursuance of said joint resolution, the commissioners of the city of Scranton have caused this bond to be signed by their president, and have caused the seal of said city, attested by their clerk, to be hereto affixed, this first day of June, A. D. 1873.

[SEAL.]          J. W. BUSHNELL, President.

Attest : F. A. BEAMISH, Clerk.

The court, after reciting the provisions of the several Acts

of Assembly, recited in the bond, and the 25th section of the Act of April 23d 1866, incorporating the city of Scranton (P. L. 1044) ; also the provisions of the Acts of April 9th 1873 (P. L. 68) ; April 30th 1864 (P. L. 219), and certain resolutions of the Finance Committee and Commissioners of the city of Scranton, held, as matter of law, inter alia, as follows:—

1. The city of Scranton, by said bond, did covenant to relieve the holder thereof from said taxes, and in effect covenant to pay the same.

2. The city is estopped from setting up any formal defects in regard to the issue of the bond.

3. That, in regard to all matters relating to the legal power of the city to issue the bond in question, the holder is bound to take notice of any want of power in the city, and the city is not precluded from setting up such want of power in this case. The holder of the bond was bound to take notice of any covenant upon the face of the bond which the city had not the express power in its charter to make.

4. The city of Scranton, at the time of issuing this bond, had no power to covenant to pay the state tax upon this bond. The charter of 1866 exempted $20,000 of the city debt from taxation for state purposes: It did not authorize the city to pay the tax. The acts of 1870 and 1873 were to the same effect. By the act of March 19th 1873, these exemptions were expressly taken away from city loans, not previously negotiated into the hands of innocent holders. At the time of the issuing of this bond, this repealing law was in force, so that, if the previous legislation could be construed to empower a city to covenant to pay a tax, the repeal, being as broad in language as the words implying the power, must be held to have repealed the power. It matters not whether the individuals of the city committee or the councils supposed they had the power, or supposed they were making a true representation ; if we are right in construing this as a question of power, the true meaning of the law as it stands is the criterion of construction, and the evidence of a fact.

In matters of this kind the city authorities act for and bind the people, and they must have express power so to do. We think nothing can be taken by implication. If this corporation has the power to make this covenant, she has it by express language in her charter ; if it rests in doubt she has not the power. It is not a question of what ought to be done *ex æquo et bono*, but a question of what has been done by the express power of the state, and we look in vain for any authority to the city of Scranton to issue bonds and pay the taxes thereon. It is not a parallel case with a bond issued by the Commonwealth, or by the United States Government, for it is possible that the state

may so act with her creditors as to render it unjust for her (having the legislative power) to exercise that power subsequent to and against such action. The powers of the city are not self-derived or self-existent; they are derived from superior powers which must grant them or they are not in existence.

The Act of March 27th 1865, does not give this power to a municipal corporation ; that we deem is lacking in her charter, even if that act should be construed to include municipal corporations, it must mean corporations who, by their charter, have such power to contract. It is doubtful if that Act conferred any power on the private citizen. He had the power to so contract naturally, and it required the usury law to take it from him, and by virtue of those laws it became unlawful to contract for any higher rate than statutory interest. The act of 1865 repealed so much of the usury laws, and restored a power which by law had been taken away, or at least rendered an exercise of it legal, but it did not confer any power on a municipal corporation. Municipal corporations have no power to contract for any unlimited rate of interest, unless conferred by their charter. It has been questioned whether a municipal corporation can agree to pay interest on its obligations without authority, though we are aware that by the course of trade and business and common custom, it is now held that they are now liable for interest on over-due obligations. In the case at bar, the power given to the city of Scranton was to pay seven per cent. interest and no more. It is true the law did exempt from state taxes, but that was no power conferred on the city ; on the contrary, it was a restraining power on the state itself. No question of implied power can arise, for an implied power is one necessary for the execution of a granted power. We therefore conclude that the city is not liable for the tax levied by the state on their bonds, and may deduct the amount as required by the law of this state from the coupons at the time of payment.

The plaintiff is therefore entitled to recover the amount of the coupons less the amount of tax which the city may now legally retain under the act of April 30th 1864, section 4. (Purdon, 1387, P. L. 219.)

5. This raises the second question in the case. The defendant asserts the right to deduct from the coupons not only the tax of current years, of which the plaintiff had notice, viz., nine dollars, but the taxes upon the bonds due for the six years previous, the coupons of which were paid without any claim for deduction, to wit, eighteen dollars in addition.

We are of the opinion that when the city has paid a coupon in full, without claim for abatement for the tax, it is a voluntary payment, binding upon her as upon an individual. It was

neglect of duty imposed by the Act of 1864, for which the city could not maintain an action to recover back the sum neglected to be deducted. As against the present holders, it could not be asserted back of the time they became owners, for they did not receive the money. We think it can not be asserted since, except in strict compliance with the Act of 1864. The city of Scranton was authorized to pay seven per cent. interest on this bond. She covenanted so to do. Her right to pay less must be in strict accordance with the law of the state which interferes with this payment. That law makes the treasurer of the city the medium for the collection of this tax, and liable for it. It makes it his duty to deduct the tax on the payment of any interest or dividend on the debt due by the city, and pay the same over within thirty days after the said interest or dividend has fallen due. The treasurer not having done this, there is no authority in the law by which he may deduct the taxes of former years; the judgment in this case should therefore be for the amount of coupons, seventy dollars, less nine dollars tax deducted since notice to plaintiff.

Judgment is therefore entered in favor of plaintiff, for the sum of sixty-one dollars.

The plaintiffs thereupon took this writ of error, and filed the following assignments of error :—

1. The learned judge erred in holding that the city of Scranton was not authorized to enter into a contract for payment of interest, clear of tax.

2. The learned judge erred in not entering judgment for the full amount of the coupon, without deduction for taxes.

3. The learned judge erred in only entering judgment for the plaintiff for the amount of the coupon, less the interest.

*Richard L. Ashhurst* (*Samuel Dickson* with him), for the plaintiff in error.—The Act of March 27th 1865 (Purd. Dig. 804, pl. 6 ; P. L. 57) which makes it lawful for " any borrower " to contract for payment of taxes on the loan, in addition to interest, applies equally to municipal and other corporations as to individuals. No express statutory authority is required to enable any corporation to do what an individual can do without statutory authority, e. g., to contract to pay interest on borrowed money. The Act of 1865 simply enacts that it shall not be usurious to agree to pay taxes in addition to interest. Such agreement not being against the policy of the law, the doctrine of ultra vires has no application when set up as a defence by a corporation to an executed contract of which it has received the benefit: Wright v. Antwerp Pipe Co., 12 W. N. C. 325 ; Merchants' Bank v. State Bank, 10 Wall. 645 ; Phila. W. & B. R. R. Co. v. Quigley, 21 How. 203.

[Fidelity, &c. Deposit Co. *v.* City of Scranton.]

*1. H. Burns*, for the defendant in error.—The clause " free of taxes for state, county or local purposes" was not inserted in the bond as a covenant, but as a recital of a statutory exemption under the Act of March 19th 1873, which was repealed by the Act of April 9th, 1873. The bond in question was not issued until June 1st 1873, after such repeal, although it is true that all parties then supposed the exemption was still in force. But a mistaken supposition does not bind a municipal corporation acting ultra vires. The doctrine of estoppel does not apply in such case. The purchaser of the bond is bound to take notice of such statutory want of authority ; Kenicott *v.* Supervisors, 16 Wall. 464 ; Buchanan *v.* Litchfield, 12 Otto 278 ; School District *v.* Stone, Chicago Legal News, Dec. 9th 1882 ; Mercer County *v.* R. R. Co., 3 Casey 404.

Mr. Justice GORDON delivered the opinion of the court, March 5th 1883.

The bond in suit was one of a number issued by the city of Scranton. It is dated June 1st 1873, and represents an indebtedness, on part of the city to the holder, of one thousand dollars, payable twenty years from date, with interest at the rate of seven per centum per annum, " payable semi-annually on the first days of December and June of each year, free of taxes for state, county or local purposes."

About the validity of this bond there is no dispute ; the contention arises from that part of it, above cited, in which is found a covenant that the interest shall be paid free from all taxes. The learned judge of the court below, to whom this case was referred, held that this covenant, so far as the state taxes were concerned, was void for the want of power in the city officials to make it. He says : " The city of Scranton, at the time of issuing this bond, had no power to covenant to pay the state tax upon this bond. The charter of 1866 exempted $20,000 of the city debt from taxation for state purposes. It did not authorize the city to pay the tax. The Acts of 1870 and 1873 were to the same effect. By the Act of April 19th 1873, these exemptions were expressly taken away from city loans, not previously negotiated into the hands of innocent holders. At the time of the issuing of this bond, this repealing law was in force, so that, if the previous legislation could be construed to empower a city to covenant to pay a tax, the repeal, being as broad in language as the words implying the power, must be held to have repealed the power. It matters not whether the individuals of the city committee or the councils supposed they had the power, or supposed they were making a true representation ; if we are right in construing this as

[Fidelity, &c. Deposit Co. *v.* City of Scranton.]

a question of power, the true meaning of the law as it stands is the criterion of construction, and the evidence of the fact." ·

With the conclusion thus reached we cannot agree, since, in our opinion, the Act of the 9th of April 1873, in no wise interfered with the power of the city councils to contract as they did. So far as mere power was concerned, they had as much after as before the date of that act. Nowhere in this statute is found the expression of an intention to interfere with municipal powers. It but repeals previous Acts exempting loans, bonds and other evidences of indebtedness, from taxation for state purposes, but it certainly does not take away from any municipality the right, if any such it had, to contract with its creditor for the payment of such tax. Could the clause cited be regarded as a mere reference to the preceding exemption Acts, there would be no doubt as to the rectitude of the judgment of the court below, for in that case, whether the holder of the bond had, or had not, taxes of any kind to pay would depend solely upon the legislative will. But that this part of the bond cannot be regarded in this light is manifest in this: at the time when the joint resolution of the city councils, of May 19th 1873, authorizing the issuing of this obligation, among others, was passed, those parts of the Acts exempting such obligations from state tax had been repealed. There was, therefore, at that time, nothing of the kind to which reference could have been had, so that if the clause referred to is to have any force whatever, it must be regarded and treated as it was in the court below, as a covenant.

Admitting, then, as settled, that there was a contract on part of the city of Scranton with its creditor to pay the state tax, we think its power to make such contract was found, not in the Act of April 23d 1866, or in that of the 19th of March 1873, but in the Act of March 27th 1865. "It shall be lawful for any borrower, whether by mortgage security or otherwise, to contract," &c. The most ample power is here given to all coming within the category of borrowers, to contract for the payment of taxes. The learned judge thought this did not apply to municipalities, but for this opinion he gives no reason. That it does apply to corporations other than municipal cannot well be denied, for the words "any borrower" can certainly not be confined to natural persons; the words are entirely too extensive in their meaning to admit of such a construction. Besides this, a power is given to contract which, as to private persons, is superogatory, since, as to them, it was only necessary to relieve such contract from the taint of usury, for which the latter part of the Act makes provision. But if the statute does apply to corporations, by what process of reasoning can we eliminate from its provisions municipal corporations? We

confess that no such process presents itself to our mind. Beyond controversy, the city of Scranton, when it received the money on the bond of the plaintiffs, was a borrower, and being such, it does seem to us, that it must certainly come within the meaning of the words "any borrower."

We conclude, therefore, that the repeal of the Acts of 1866 and 1873 in no way affected the power of the defendant to contract for the payment of taxes, a power previously conferred upon it by the Act of 1865, and that thus having the power, and having so contracted with the payee of the bond now held by the plaintiffs, it must pay the coupons, which they hold, without deduction or abatement.

The judgment is reversed, and it is ordered that the court below direct judgment to be entered for the plaintiffs for the full amount of the coupons in suit with interest and costs.