## Apollo Borough *v.* Clepper.

*Municipal liens—Locality index—Mandatory statute—Statutes.*

1. Section 27 of the Act of June 4, 1901, P. L. 364, which provides that "it shall be the duty of the prothonotary of the courts of common pleas to keep a locality index in which shall be entered all tax or municipal claims hereafter filed," is mandatory; and if a locality index is not kept in a county, and a municipal lien for improvements is entered in the wrong name in the judgment and mechanic lien indexes, a purchaser of the property assessed, without actual notice of the lien, takes it free of the lien.

2. Whether the words of a statute are to be interpreted as mandatory or merely directory depends upon whether the thing directed to be done is of the essence of the thing required, or is a mere matter of form.

3. A direction contained in a statute though couched as in permissive language will not be construed as leaving the acceptance optional, where the good sense of the entire enactment requires its provisions to be deemed compulsory.

4. The words "shall be lawful" though permissive in form are to be construed as directory or mandatory according as the circumstances in each case show the intention of the legislature to be.

Argued May 9, 1910. Appeal, No. 169, April T., 1910, by William A. Shaw, Terre-Tenant, from judgment of C. P. Armstrong Co., March T., 1909, No. 222, for plaintiff on case stated in suit of Burgess and Town Council of Apollo Borough v. Lizzie Clepper, defendant, and William A. Shaw. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Case stated on scire facias sur municipal lien. Before PATTON, P. J.

The facts are stated in the opinion of the Superior Court.

396, (1910).] Assignment of Error—Opinion of the Court.

*Error assigned* was in entering judgment for plaintiff on case stated.

*H. A. Heilman,* for appellant.—The failure of the prothonotary to enter the municipal lien in this case in a locality index and the failure to keep such a book as required by sec. 27 of the Act of June 4, 1901, P. L. 364, invalidated the lien in this case and made the same void and of no effect as against him, a third person, an innocent purchaser for value: Glading v. Frick, 88 Pa. 460; Cessna's App., 19 W. N. C. 530; Bear v. Patterson, 3 W. & S. 233; Summy v. Hiestand, 65 Pa. 300; Goepp· v. Gartiser, 35 Pa. 130; Smith's App., 47 Pa. 128; Dewhurst v. Allegheny, 95 Pa. 437; Kisler v. Mosser, 140 Pa. 367; Erie City v. Willis, 26 Pa. Superior Ct. 459.

*Clarence O. Morris,* for appellee.—The mention of the name of the owner in connection with the land is only required as descriptive of the land, and when the assessment and the claim themselves clearly and absolutely identify the land, that is all that is required: Phila. v. Nell, 31 Pa. Superior Ct. 81; Erie City v. Willis, 26 Pa. Superior Ct. 459; Phila. v. Peyton, 25 Pa. Superior Ct. 350.

Where words are affirmative and relate to the manner in which power or jurisdiction in a public officer or body is to be exercised, and not the limits of the power, they are in general directory: Pittsburg v. Coursin, 74 Pa. 400; White v. McKeesport Boro., 101 Pa. 394; Beaumont v. Wilkes-Barre, 142 Pa. 198.

OPINION BY ORLADY, J., October 10, 1910:

The plaintiff borough, under the provisions of an ordinance duly enacted, graded, curbed and paved with vitrified brick, Terrace avenue in the borough of Apollo. On October 18, 1903, viewers were appointed to ascertain the cost, the damages and benefits to the properties peculiarly benefited by the improvement, and among

others there was assessed against the property of Mrs. Lizzie Clepper $188.40 as a benefit to her property.

At the time of the improvement, the correct name of the owner of the lot of ground involved in this proceeding, was Mrs. Nancy E. Clepper, as shown by her deed for the lot, which was of record in the recorder's office of Armstrong county, although she was generally known in the community where she resided as Mrs. Lizzie Clepper. In the assessment made by the viewers, and the ordinance passed by the council, the property was described as being owned by Mrs. Lizzie Clepper, although the assessment against it for taxes was in the name of Mrs. Nancy E. Clepper, who was in the actual possession of the property during the time the improvement was made and for some time thereafter.

On March 21, 1904, the borough solicitor filed in the prothonotary's office, a municipal claim for this improvement against "Mrs. Lizzie Clepper, owner or reputed owner, or whoever may be the real owner," for the sum of $188.40, with interest from February 12, 1904, and described the property as follows: "All that certain lot or piece of ground, in the Borough of Apollo, Armstrong County, Pa., situated on the West side of Terrace Avenue, in said Borough; having a frontage on said avenue of eighty feet, and extending back, preserving the same width, thirty and seven tenths feet; bounded on the North by U. J. Miller; on the East by Terrace Avenue; on the South by North Fifth street; on the West by ———. Together with the buildings and improvements thereon erected." The lien was entered in the mechanic's lien docket in the prothonotary's office, and also in the judgment docket in the name of Mrs. Lizzie Clepper. It was not entered in a municipal lien docket or in a locality index, as provided by sec. 27 of the Act of June 4, 1901, P. L. 364; no such docket having been provided or kept for that purpose in that county.

On October 24, 1908, William A. Shaw made a careful examination of the lien records of Armstrong county, and

finding no liens against Nancy E. Clepper, purchased the property from her, paid the purchase money in full and received a general warranty deed for the land which was duly recorded; subsequently he was notified of the claim of the borough by its solicitor, and on February 27, 1909, a scire facias sur municipal lien was issued in which Shaw was named as a defendant and terre-tenant.

The facts above stated were agreed upon for the opinion of the court, and in its opinion filed in the court below, a judgment was entered in favor of the plaintiff for the amount of the claim, with costs, to which William A. Shaw excepted and took this appeal.

It is admitted that had this been a proceeding in personam and had William A. Shaw, the purchaser, after proper examination of the lien records, failed to find any judgments against Nancy E. Clepper, that a judgment against Lizzie Clepper, would not bind the land, and he would take it clear of the lien: Crouse v. Murphy, 140 Pa. 335; Burns v. Ross, 215 Pa. 293. But the court held that this being a proceeding in rem, the land being debtor for the claim, it is not required that it should be filed against the true owner. It may be filed against the reputed owner; and this because the mention of the owner at all is requisite only as descriptive of the land, which is debtor to the assessment. The requisition that the claim shall state the name of the owner or reputed owner is the same as is made by the act of 1836, relating to the claims of mechanics and material men, under which it has been held that it is not necessary to set forth the name of the real owner, and the same principle has been held applicable to municipal claims. So too, in a sale of unseated land for the payment of taxes, a good title passes whether it is sold in the name of the owner, the name of the warrantee or a stranger, and whether the person in whose name it is taxed and sold has or has not any title: Strauch v. Shoemaker, 1 W. & S. 166; Northern Liberties v. Coates, 15 Pa. 245. That under the above authorities the lien was a valid one against the land, whether the owner or reputed

owner was Nancy E. Clepper or Lizzie Clepper, and that it was not necessary to make any record of the lien in a locality index, or for the prothonotary to have such a record, stating that, "a locality index is a novelty in rural communities of this commonwealth, and so far as we can learn from the books there is no case reported in regard to it except in the larger cities." How the prothonotary of Armstrong county would keep a locality index, and what he should enter therein, would be hard to determine, there being no registry bureau as provided by the Acts of March 14, 1865, P. L. 320, and March 29, 1867, P. L. 600, which relate to the registry of titles in Philadelphia, and further, that the requirements of sec. 27 of the Act of June 4, 1901, P. L. 364, were directory only.

An examination of this act shows that it was very carefully considered before it was submitted to the governor for his approval. Its title is as follows: "An Act, providing, when, how, upon what property, and to what extent, liens shall be allowed for taxes, and for municipal improvements, and for the removal of nuisances; the procedure upon claims filed therefor; the methods of preserving such liens and enforcing payment of such claims; the effect of judicial sales of the property liened, and the manner of distributing the proceeds of such sales."

It is an elaborate and comprehensive declaration of the legislative will, and its concluding paragraph is as follows: "And all other Acts or parts of Acts of Assembly of this Commonwealth, general, special or local, appertaining to the subject-matter covered by this Act, be and the same are hereby repealed; it being intended that this Act shall furnish a complete and exclusive system in itself, so far as relates to the practice and procedure for the filing, collection and extent of tax and municipal claims, the right to file which accrued after the approval of this Act." It contains forty-two sections, embodying thirty-nine pages of our Pamphlet Laws, and by specific mention repeals more than 200 acts and parts of acts, which were supplied by this later enactment. Section 26 is as follows:

"Every claim filed, scire facias issued, verdict recovered, and judgment entered, in accordance with the provisions of this act, shall be docketed in the mechanic's lien docket, and shall be entered on the judgment index of the court. When a claim is stricken off or satisfied, the name of a defendant stricken out, a scire facias discontinued or quashed, or a verdict or judgment stricken off or satisfied, a note thereof shall be made on said judgment index, but not in an appealable matter until the expiration of the time for such appeal." Section 27 provides: "It shall be the duty of the prothonotaries of the Courts of Common Pleas to keep a Locality Index, in which shall be entered all tax or municipal claims hereafter filed, and upon any written order therefor they shall give a certificate of search showing all the claims filed against any property. For so doing they shall receive the sum of twenty-five cents, and five cents additional for each claim certified, and no more."

The Act of March 31, 1864, P. L. 171, referred to by the court below, provides for the more accurate indexing of liens against real estate in the city of Philadelphia, viz.: "It shall be the duty of the prothonotaries of the Court of Common Pleas, and of the District Court of the City and County of Philadelphia, to keep a Locality Index, in which shall be registered the street front of real estate against which claims are or shall be filed, to enforce liens for taxes, municipal work, or of mechanics or material men, etc." The requirements of the act of 1901 are expressed in plain, unambiguous terms, and are capable of a reasonable and intelligent application. The legislature had sufficient reasons for enacting them, and intended them to be complied with. They have been followed in a number of the rural counties with very beneficial results. While the act of March 31, 1864, affected Philadelphia county alone, it was an important step in a new system, and after a test of more than forty years, the act of 1901 extended the locality index provision to the rest of the commonwealth, and this has been the course followed in a

number of other measures, where experience has demonstrated the efficiency and propriety of acts which were originally local in their application.

None of these acts of assembly relating to Philadelphia are repealed by the act of 1901, and we held in Philadelphia v. Unknown, 20 Pa. Superior Ct. 203, that they impose a positive duty upon all owners of lots, "to furnish forthwith, a description of their property to the chief engineer and surveyor, to aid him in making up the books of plans." When property has been so returned, it is not subject to sale for taxes, or other municipal claims thereafter to accrue, except in the name of the owner as returned, and after recovery by suit, and service of writ on him, made as in the case of a summons, and that real estate registered as directed by the statutes referred to, is after such registration, not subject to sale for taxes or other municipal claims thereafter to accrue, as a lien of record thereon, except in the name of the owner as returned: Philadelphia v. Peyton, 25 Pa. Superior Ct. 350.

As was said by Judge PORTER in Philadelphia v. Nell, 31 Pa. Superior Ct. 81: "Proceedings upon municipal claims are purely in rem, the proceeding is against the specific property, and the judgment in a scire facias upon such a claim creates no lien. Although the revival of the lien is affected in the same form, the lien of the claim, either before or after judgment thereon, is of a widely different nature from that of an ordinary judgment. It must be borne in mind, however, that judgments recovered upon mechanics' and municipal liens, mortgages, recognizances in the orphans' court, as to the lands of the principal cognizor, are not themselves liens as of the date of their entry, they simply give effect to the lien of the original debt, or the lien which they represent, respectively, as a means of enforcement and collection; therefore it is that the lien of a mechanic's or municipal claim, when referred to in the various acts of assembly, even after judgment, is expressed as the lien of the debt or claim, and not of the judgment: Haddington Church v. Phila-

delphia, 108 Pa. 466; Helmbold v. Man, 4 Whart. 410; Wills v. Gibson, 7 Pa. 154."

The general Act of March 18, 1875, P. L. 32, provides that, "In addition to the indexes which the recorder of deeds in each county of this commonwealth is required to keep, the said recorder shall carefully and accurately prepare and keep in his office, two general indexes of all deeds recorded therein, in one of which, to be known as the direct index, he shall enter in their order, the name of the grantor, etc., and in the other, to be known as the ad sectum index, he shall enter in their order the name of the grantee, the name of the grantor, etc. He shall in like manner also, prepare and keep two general indexes, one direct and the other ad sectum, of all mortgages recorded in his office. . . ."

Whether the words of a statute are to be interpreted as mandatory or merely directory, depends upon whether the thing directed to be done is of the essence of the thing required, or is a mere matter of form: Norwegian Street, 81 Pa. 349. A direction contained in a statute, though couched as in permissive language, will not be construed as leaving the acceptance optional, where the good sense of the entire enactment requires its provisions to be deemed compulsory. The intention is to be judged by the purpose of the statute: Carbaugh v. Sanders, 13 Pa. Superior Ct. 361. The words "shall be lawful" though permissive in form, are to be construed as directory or mandatory, according as the circumstances in each case show the intention of the legislature to be: Com. v. Marshall, 3 W. N. C. 182.

Generally the words of a statute are to be construed according to their popular and ordinary acceptation, and not necessarily according to the strict rules of etymology and grammar: Schuylkill Bridge Co. v. Frailey, 13 S. & R. 422; Penna. R. R. Co. v. Price, 96 Pa. 256; Fidelity Ins., etc., Co. v. Scranton, 102 Pa. 387; Com. v. Forrest, 170 Pa. 40.

Ordinarily the word "shall" in a statute is mandatory,

and while it may be construed to read "may," when absolutely necessary to prevent injustice and mischief, or be construed as directory so that it will not interfere with the vested rights, or conflict with the proper exercise of power by either of the fundamental branches of government, such construction will not be adopted where it would do violence to the intent and meaning of the statute, which is clearly within the scope of the legislative authority even though it is unusual in its terms.

Section 27 of the act of 1901 was evidently deemed by the legislature as an important provision of the general enactment in order to protect the rights of subsequent purchasers of real estate, in cases where the property had been made the subject of a tax lien or municipal claim, and the provision requiring that a locality index shall be kept by the prothonotary is of no greater but of just as much significance as the provisions in sec. 26, in requiring the claim, verdict and judgment to be docketed in the mechanic's lien docket and in the judgment index of the court. With the propriety of such requirement we are not concerned and are limited to giving a reasonable interpretation of the enactment by the legislature.

As was said in Lancaster County v. Lancaster City, 160 Pa. 411, "It is not always easy to determine whether a provision is mandatory or only directory, but there are two good rules which are often of much assistance in deciding this question. The first is referred to in Bladen v. Philadelphia, 60 Pa. 464: 'Where the words are affirmative and relate to the manner in which power or jurisdiction vested in a public office or body is to be exercised, and not to the limits of the power or jurisdiction itself, they may, and often have been construed to be directory.' See also Pittsburg v. Coursin, 74 Pa. 400; Dewhurst v. Allegheny, 95 Pa. 437; Hershberger v. Pittsburg, 115 Pa. 78; Cusick's Election, 136 Pa. 459; Potter's Dwar. St. 222, note 29. The other side of the rule is approved in Norwegian Street, 81 Pa. 349, in the following language: 'There is a class of cases which hold that whether a stat-

ute is to be regarded as directory or not, is made to depend upon the employment or failure to employ negative words which import that an act should be done in a particular manner of time and not otherwise.' Perhaps Lord MANSFIELD's rule in Rex v. Loxdale, 1 Burr, 445, is a better one (and this is the second rule we have in view), that, whether a statute is mandatory or not depends on whether the thing directed to be done is the essence of the thing required.

"Every part of a statute should be brought into action in order to collect from the whole one uniform and consistent sense if that may be done, or, in other words, the construction must be made upon the entire statute and not merely upon disjointed parts of it." Broom's Leg. Max. 513. "It is the most natural and genuine exposition of a statute," says Lord COKE, "to construe one part of the statute by another part of the same statute, for that best expresseth the meaning of the makers." The same rule is to be found in Potter's Dwarris on Statutes, 144, in this language: "In the construction of a statute every part of it must be viewed in connection with the whole, so as to make all its parts harmonize if practicable and give a sensible and intelligent effect to each. It is not to be presumed that the legislature intended any part of a statute to be without meaning." See Turnpike Road Co. v. Montgomery County, 228 Pa. 1.

In Erie City v. Willis, 26 Pa. Superior Ct. 459, we held that the neglect of the prothonotary to enter a municipal lien for assessments in the mechanic's lien docket, and to keep a locality index as required by secs. 26 and 27 of the act of May 16, does not invalidate a municipal lien for assessments for benefits to property as between the parties, nor absolutely bar recovery upon the scire facias issued upon the lien; but we declined to express any opinion in that case upon the effect of these irregularities upon the rights of the plaintiff as against third parties, as that matter was not then before us. This case presents the very question of the rights of a vigilant and innocent third

party, and it is determined by the case of Prouty v. Marshall, 225 Pa. 570, in which the Supreme Court says, "The object of the recording acts is to give notice to the world of that which is spread upon the record. Therefore, the record is constructive notice to all persons, without regard to the fact of actual notice. Under our system, the record is open to every one who desires to ascertain the condition of the title to any piece of real estate, in so far as its ownership is concerned, or as to incumbrances thereon, and every one is bound to take notice of what the record shows, and searchers may rely upon the record as it stands. If it were not so, no one would be safe in purchasing real estate, or in loaning upon the strength of it as security . . . . the record is notice of just what it contains, no more and no less. The obligation of seeing that the record of an instrument is correct, must properly rest upon its holder. If he fails to protect himself, the consequence cannot justly be shifted upon an innocent purchaser."

Applying these frequently repeated rules of the courts to this act of 1901, we have no hesitancy in holding that sec. 27 was deemed by the legislature as an important and necessary part of the whole statute. It is doubtless true that when first brought to the attention of the prothonotaries in the rural counties, it was deemed a novelty. The same surprise is doubtless exhibited at other new legislative requirements, but we are expected to interpret them in the sense in which they are enacted, and to carry their provisions into effect. The prothonotary of Armstrong county would have no trouble in keeping a locality index from the material furnished in the lien entered by him in the mechanic's lien docket and judgment docket. The lien was filed against "Mrs. Lizzie Clepper, owner or reputed owner, or whoever may be the real owner," and these designations would suggest indexing it under these three descriptions. The property itself was particularly described as to location and dimension and had the provisions of this act been complied with the appellant would have had no

excuse for not finding the lien against the property he was about to purchase.

It is not necessary for us to say what our conclusion would be if the claim had been properly indexed in the mechanic's lien docket as that question is not properly before us.

The assignment of error is sustained. The judgment is reversed.

PORTER dissents.