**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| DONALD R. BINDAS, | : | No. 27 WAP 2022 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court entered May |
| | : | 18, 2021 at No. 652 CD 2018, |
| v. | : | affirming the Order of the Court of |
| | : | Common Pleas of Washington |
| | : | County entered February 26, 2018 |
| COMMONWEALTH OF PENNSYLVANIA, | : | at No. 2016-4760. |
| DEPARTMENT OF TRANSPORTATION, | : | |
| | : | ARGUED: April 19, 2023 |
| Appellee | : | |

**OPINION**

**JUSTICE WECHT**                                    **DECIDED: AUGUST 22, 2023**

In 2015, the Department of Transportation ("PennDOT") began constructing a diamond interchange and installing a drainage system on property abutting Interstate 70 ("I-70") in Washington County, Pennsylvania. The property's owner, Donald Bindas, filed a petition for the appointment of a board of viewers, seeking compensation for this encumbrance upon his land. PennDOT asserted that its predecessor, the Department of Highways ("DOH"), had secured a highway easement for the land in question in 1958. Both the trial court and the Commonwealth Court agreed, dismissing Bindas' suit. Upon our review of the statutory authority that PennDOT invokes, as well as the record, we find that DOH's failure to comply with the requirements of 36 P.S. § 670-210 renders that easement invalid. Accordingly, we vacate the Commonwealth Court's order, and we remand with the instruction that PennDOT's preliminary objections be overruled.

The General Assembly enacted the State Highway Law in 1945.  Section 210 therein states:

> The [Secretary of Transportation] is hereby empowered to change, alter, or establish the width, lines, location, or grades of any State highway or any intersecting road in any township, borough, or incorporated town, in such manner as, in his discretion, may seem best, in order to correct danger or inconvenience to the traveling public, or lessen the cost to the Commonwealth in the construction, reconstruction, or maintenance thereof. . . . Before any change or order of vacation is made, the secretary shall first submit a plan of the proposed change or any proposed order of vacation duly acknowledged to the Governor; and the same shall be approved by him, and filed as a public record in the office of the department and a copy thereof shall be recorded in the office for the recording of deeds in the proper county at the expense of the department in a plan book or books provided by the county for that purpose. The approval of such plan or plans by the Governor shall be considered to be the condemnation of an easement for highway purposes from all property within the lines marked as required for right of way and the condemnation of an easement of support or protection from all property within the lines marked as required for slopes. All plans or orders so approved, filed and recorded, shall indicate the names of the owners or reputed owners of the land affected by taking or vacation and of lands abutting the same. It shall be the duty of the recorder of deeds of each county to provide a plan book or books for the recording of such plans and orders, and to maintain an adequate locality index for the same.[1]

Thirteen years later, the Governor approved and signed a "Construction and Condemnation of Right of Way Plan" providing for the expansion of I-70.  At the time, the property now owned by Bindas covered two separate parcels, one owned by Otto and Rose Koehler, and the other owned by E. Helene Carter.  The Koehlers and Carter signed quitclaim deeds to DOH, which were not recorded.  In 1976, the Washington County Tax Claim Bureau acquired both parcels.  The next year, it sold the property to Frances and Cecilia Jaworski, who, in turn, sold the property to Bindas.

The chain of title of the Carter property included the following paragraph in subsequent deeds:

---

[1]     36 P.S. § 670-210.

EXCEPTING and RESERVING therefrom and thereout the greater portion of the above described tract, condemned by the Commonwealth of Pennsylvania for highway purposes for a limited access highway as shown on Sheet No. 44 of Right of Way Plan for Route No. 798, Section No. 1-A, Washington County, as approved by the Governor on August 1, 1958; the portion so taken being situated between [the enumerated] Stations [ ] on the left side of the road.[2]

Nevertheless, when Sheila Sten—a title searcher in Washington County for thirty-three years, enlisted by Bindas—investigated PennDOT's claim in April 2016, she found no encumbrances upon the property. Only when PennDOT's counsel alerted her to its existence did Sten find a copy of the 1958 plan on microfilm, in an unlabeled drawer at the Washington County Recorder of Deeds office. The drawers were not indexed.

Following the title search, Bindas petitioned for the appointment of a board of viewers in August 2016. PennDOT filed preliminary objections and the trial court held an evidentiary hearing in September 2017. Bindas argued that Section 210 required not only recording of the 1958 plan, but indexing within a locality index. Furthermore, he asserted that it was PennDOT's duty to ensure that the plan was properly indexed, and that the Department's failure to do so left it without an enforceable interest in the property. Citing *First Citizens National Bank v. Sherwood*, 879 A.2d 178 (Pa. 2005), PennDOT maintained that "the fact that the 1958 Plan was not properly indexed does not void the condemnation action so long as it is properly filed and recorded."[3]

The trial court granted PennDOT's preliminary objections, finding that "the lack of indexing" was "the fault of the Washington County Recorder of Deeds Office."[4] It therefore refused to divest PennDOT of a property interest based upon a third party's error. The court reasoned that several deeds expressly referred to the easement, a

---

[2]    R.R. 313-16a.

[3]    PennDOT Tr. Ct. Br. in Support of Preliminary Objections, at 9.

[4]    Tr. Ct. Op., 5/24/18, at 6.

search was warranted by prospective buyers, and a PennDOT employee had been able to locate the document at the County Recorder's Office in a matter of minutes. Finding that this case was analogous to *Sherwood*, the court held that a "defective indexing does not invalidate the instrument."[5] Accordingly, it sustained PennDOT's preliminary objections.

Bindas appealed, and the Commonwealth Court, sitting *en banc*, affirmed.[6] The court relied upon Section 210's provision that "[t]he approval of such plan or plans by the Governor shall be considered to be the condemnation of an easement," and found that PennDOT had satisfied the State Highway Law's command.[7] It cited *Commonwealth, Department of Transportation v. McGowan*, 450 A.2d 232 (Pa. Cmwlth. 1982), for the proposition that the recording of the 1958 plan provided Bindas with constructive notice of the easement. Because it is the duty of the purchaser of real estate to investigate its title and to exercise due diligence in doing so,[8] the majority held that Bindas should have known to examine the extent of PennDOT's interest in the property. Because PennDOT complied with the requirements of Section 210 and provided just compensation to the Koehlers and Carter, the court determined that Bindas' argument failed.

Judges Covey and Ceisler authored dissents. Judge Covey found that DOH had a duty to ensure proper recording and indexing under *Prouty v. Marshall*, 74 A. 550 (Pa. 1909). She argued that Pennsylvania courts have "repeatedly applied" the principle that "[t]he person offering an instrument for record has a duty to see that it is properly recorded

---

[5]      *Id.* at 7.

[6]      *Bindas v. PennDOT*, 260 A.3d 991 (Pa. Cmwlth. 2021).

[7]      *Id.* at 999.

[8]      *See Ohio River Junction R. Co. v. Pennsylvania Co.*, 72 A.2d 271, 273 (Pa. 1909).

and properly indexed, and cannot hide behind a mistake of the recorder."[9]  While Section 210 imposed a duty upon the Recorder of Deeds to record plans and maintain indexes, it "does not explicitly allocate the risk of defective recording or indexing as between the parties."[10]  Accordingly, Judge Covey would have endorsed Bindas' position as a matter of law, and would have reversed the trial court's order.

Judge Ceisler's dissent focused upon the text of Section 210 and the purpose of the indexing requirement.  She acknowledged that statutes providing for the power of eminent domain should be strictly construed, and that a court must read a statute to give effect to all of its provisions.[11]

> Under the Majority's interpretation of Section 210 of the State Highway Law, all that is required for property to be condemned by [PennDOT] is that the Governor approve the plan and that [PennDOT] present the plan to the county recorder of deeds office for filing, without ever ensuring that the plan is properly recorded or indexed. Such an interpretation renders the remainder of Section 210 meaningless.[12]

When Section 210 refers to "such plan," she contended, it refers to a plan that has been "approved, filed and recorded," and "*all three actions* are required for condemnation."[13] Judge Ceisler added that Sten's inability to locate evidence of the easement while a PennDOT employee could locate it in five minutes demonstrated "why a highway plan must be properly recorded and indexed in order to provide notice to affected landowners."[14]  Because the 1958 Plan was not recorded "*in a plan book*," as Section 210

---

[9]     *Bindas*, 260 A.3d at 1002 (Covey, J., dissenting) (quoting *In re 250 Bell Rd., Lower Merion Twp., Montgomery Cnty.*, 388 A.2d 297, 300 n.3 (Pa. 1978)) (emphasis removed).

[10]    *Id.* (cleaned up).

[11]    *Id.* at 1003-04 (Ceisler, J., dissenting) (citing 1 Pa.C.S. §§ 1928(b)(4); 1921(a)).

[12]    *Id.* at 1006 (quoting 36 P.S. § 670-210).

[13]    *Id.* (emphasis in original).

[14]    *Id.* at 1004.

requires, she also found *Sherwood* distinguishable.[15] Like Judge Covey, she would have reversed the trial court's order.

Bindas petitioned for allowance of appeal, which this Court granted. The issues, as stated by Bindas, are as follows:

1. Did the Commonwealth Court err in finding that a right of way plan approved by the Governor is effective to condemn property pursuant to 36 P.S. § 670-210 without the proper recording and indexing as required by that statute?

2. Did the Commonwealth Court err in finding that the Department of Transportation and its predecessor, the Department of Highways, have no duty to ensure its right of way plans are properly recorded and indexed as required by 36 P.S. § 670-210?

Bindas argues that the Commonwealth Court ignored Section 210's use of the mandatory "shall," and that its interpretation renders parts of that provision entirely superfluous.[16] He further contends that the majority below relied upon inapposite precedent[17] and considered improper factors, such as the payment of compensation (which is not an element of Section 210) and whether he had actual or constructive notice of the Plan (which "has no bearing on the validity of the condemnation").[18] Nothing in the

---

[15] *Id.* at 1005 (quoting 36 P.S. § 670-210) (emphasis in original). In *Sherwood*, the record at issue was properly recorded, but not indexed.

[16] *See* Bindas' Br. at 32-33.

[17] The Commonwealth Court majority cited *Smith v. Commonwealth*, 40 A.2d 383, 384 (Pa. 1945), *Appeal of Harrisburg*, 107 A.2d 868, 870 (Pa. 1954), and *Appeal of Commonwealth*, 221 A.2d 289, 291 (Pa. 1966). *See Bindas*, 260 A.3d at 998-99. As the court recognized, *Harrisburg* dealt with "similar language" in 36 P.S. § 670-208, a provision regarding takings, and *Smith* dealt with a predecessor to Section 210. *Id.* Bindas argues that *Appeal of Commonwealth*'s focus was Section 219, not Section 210, and asserts that the Commonwealth Court "ignored" contrary case law regarding the predecessor statute at issue in *Smith*. *See* Bindas' Br. at 22 (citing *Urbanski's Petition*, 194 A. 210, 211 (Pa. Super. 1937) (holding that, under the predecessor statute, DOH does not have the authority to enter upon and take land "unless and until a plan showing such taking has been prepared, approved by the Governor *and filed* . . . as a public record") (emphasis in brief)).

[18] Bindas' Br. at 27.

record, according to Bindas, substantiates the Commonwealth Court's claim that he had actual or constructive notice. While there may have been evidence of the Plan in the chain of title of the Carter property, it did not reveal itself in a title search of Bindas' property, "lend[ing] further credence to the importance [and] the necessity of proper recording and indexing required by Section 210."[19]

Bindas also asserts that the Commonwealth Court's invocation of *McGowan* provides no support. First, he notes that *McGowan* did not squarely address the role of compliance with plan book and indexing requirements. There, PennDOT argued that a condemnation of subject properties had occurred, and that constructive notice of the taking had been provided to the property owner's predecessors in title by virtue of the proper county recording in the plan. But because PennDOT had not provided a copy of the pertinent plan in the record, the Commonwealth Court found itself "unable to verify whether the plan was actually filed in Montgomery County and whether it was filed pursuant to Section 206 or 210."[20] Second, Bindas argues, *McGowan*'s reference to constructive notice arises in the context of when a condemnation occurs, and not subsequent purchasers acquiring property from an owner whose land was subject to a condemnation.[21]

In relying upon the existence of actual or constructive notice of the Plan—which "has no bearing on the statutory language in question"—the Commonwealth Court, Bindas contends, "shifted the burden away from PennDOT and its predecessor."[22] Rather

---

[19]     *Id.* at 29.

[20]     *McGowan*, 450 A.2d at 234.

[21]     Bindas' Br. at 30 (citing *McGowan*, 450 A.2d at 234 n.7).

[22]     *Id.* at 31.

than requiring PennDOT to demonstrate that its condemnation was valid, he asserts that the court asked him to prove that the condemnation was defective.

Pursuant to the second question presented, Bindas submits that PennDOT and DOH had a duty to ensure the proper recording and indexing of the Plan under this Court's decision in *Prouty*.[23] While the Commonwealth Court offered a factual distinction in finding that Bindas' reliance upon *Prouty* was "misplaced," he points out that the majority below "did not assail [his] reliance . . . as it related to the principle of which party bore the burden [of] ensuring that the recording of an instrument was correct."[24]

Bindas cites several cases in which lower courts have adhered to *Prouty*.[25] Most notably, in *Apollo Borough v. Clepper*, the Superior Court held that a purchaser of property acquired it free of a mechanics' lien, because the lien had not been placed in a locality index.[26] The purchaser searched relevant dockets and indexes, finding nothing. In light of a statute providing that "[i]t shall be the duty of the prothonotaries of the Court of Common Pleas . . . to keep a Locality Index" in which such liens would be registered, the court opined that "had the provisions of this act been complied with, [the purchaser] would

---

[23]    74 A. at 551 ("The obligation of seeing that the record of an instrument is correct must properly rest upon its holder. If he fails to protect himself, the consequence cannot justly be shifted upon an innocent purchaser.").

[24]    Bindas' Br. at 36.

[25]    *See In re 250 Bell Rd., Lower Merion Twp., Montgomery Cnty.*, 388 A.2d at 300 n.3; *Commonwealth v. Roberts*, 141 A.2d 393 (Pa. 1958); *U.S. Nat'l Bank Ass'n v. United Hands Cmty. Land Tr.*, 129 A.3d 627, 638 n.8 (Pa. Cmwlth. 2015); *Antonis v. Liberati*, 821 A.2d 666, 669-70 (Pa. Cmwlth. 2003); *Commonwealth Fed. Sav. & Loan Ass'n v. Pettit*, 586 A.2d 1021, 1024 n.6 (Pa. Cmwlth. 1991); *Jarrell v. Fidelity-Philadelphia Tr. Co.*, 33 Pa.D.&C.2d 143, 146 (C.P. Delaware 1963); *Mercer v. Santa Lucia of Hillsville*, 82 Pa.D.&C. 233, 241 (C.P. Lawrence 1952).

[26]    44 Pa. Super. 396 (1910).

have had no excuse for not finding the lien against the property he was about to purchase."[27] Bindas argues that he is similarly situated to the purchaser in *Clepper*.

While the recording of a plan in a plan book and its indexing within a locality index are "ministerial actions to be performed by the local recorder of deeds," Bindas maintains that PennDOT, as holder of the instrument, had an obligation to ensure that the recorder complied with the statute.[28] He cites multiple treatises that have acknowledged this general rule, and he defends its logic.[29] PennDOT, he avers, is the only party with an interest in seeing that the Plan was recorded and indexed in compliance with Section 210. Had the recorder's office failed to perform its ministerial function, or done so erroneously, PennDOT could have sought a writ of mandamus to remedy those failures.[30]

In reply, PennDOT asserts that the law in effect in 1958 did not require a uniform system of filing, recording, and indexing condemnations. Rather, it claims that the Eminent Domain Code of 1964 imposed that requirement,[31] and that the Commonwealth Court applied the correct test: "the Governor's approval shall be considered to work a

---

[27]     *Id.* at 403-6 (citing Act of March 18, 1875, P.L. 32).

[28]     Bindas' Br. at 44.

[29]     *Id.* at 40-42 (citing Edward C. Sweeney, *The Duty and Function of Pennsylvania Recorders of Deeds Offices and* Chesapeake Appalachia, LLC v. Ginger Golden, 83 PA. BAR. ASS'N QUARTERLY 155, 169 (2019) ("[A]ccuracy is for the filer of the document, the mortgagee, to ensure.  If the Recorder of Deeds is a library, its filers are responsible for whether users can find their filings in the library."); LADNER PENNSYLVANIA REAL ESTATE LAW § 19.07 (Bisel 6th ed. 2013) ("[T]he party placing a document of record still has a duty to verify that the document was properly indexed and transcribed. . . . That party should examine the record and see that no mistake has been made in either indexing or transcribing.  It has a duty to do so.")).

[30]     *Id.* at 44 (citing *Phila. Newspaper, Inc. v. Jerome*, 387 A.2d 425, 430 n.11 (Pa. 1978)).

[31]     PennDOT's Br. at 9 (citing Act of June 22, 1964, P.L. 84, No. 6, 26 P.S. §§ 1-101, *et seq.*).

condemnation."[32] The opinion below, according to PennDOT, flowed from the plain language of the statute and the *en banc* majority's recognition that "all of the actions necessary for the condemnation of [the] property occurred in 1958, including the payment of just compensation."[33]

PennDOT contends that the Commonwealth Court's reasoning in *McGowan* is controlling, and recommends that we adopt it.[34] Furthermore, it stresses that our prior case law has recognized that the recording of a plan in the appropriate county recorder of deeds office constitutes constructive notice of the condemnation.[35] PennDOT asks us to presume that, when the General Assembly enacted Section 210, it was aware of indexing requirements applicable to other property instruments, such as deeds and mortgages.[36] Its decision not to require such indexing for condemnations, according to PennDOT, therefore is instructive. Moreover, PennDOT directs the Court's attention to a comment to Section 404 of the Eminent Domain Code of 1964, which states that the provision[37] "ha[d] no counterpart in existing law," and that "[u]nder existing law, the State

[32] *Id.* at 13 (quoting 36 P.S. § 670-210); *see Appeal of Commonwealth*, 221 A.2d at 291.

[33] *Id.* at 14 (citing *Bindas*, 260 A.3d at 999).

[34] *Id.* at 15-16 (citing *McGowan*, 450 A.2d 234).

[35] *Id.* at 15 (citing *Pane v. DOH*, 222 A.2d 913, 916 (Pa. 1966) ("The recording of this plan constituted constructive notice to the property owners . . ."); *Strong Appeal*, 161 A.2d 380, 383 (Pa. 1960) ("[F]iling a Governor-approved plan in the county where the road lies is constructive notice of condemnation to the landowner . . .")).

[36] *Id.* at 17 (citing 16 P.S. §§ 9701-9857; 21 P.S. §§ 1, *et seq.*).

[37] The condemnor, upon filing its declaration of taking, shall on the same day lodge for record a notice thereof in the office of the record of deeds of the county in which the property is located. . . . The notice shall specify the court term and number of the declaration of taking and the date it was filed, and shall contain a description or plan of the property condemned sufficient for the identification thereof and the names of the owners of the property
(continued…)

Highway Department *records* a plan."[38]  Together with the fact that the Eminent Domain Code of 1964 does not apply retroactively to property acquired under the State Highway Law, PennDOT claims to have established that indexing was not a legal requirement in the Commonwealth at the time of the condemnation.[39]

Regarding whether it had a duty to ensure that the Plan was recorded, PennDOT points to the language of Section 210: "it shall be the duty of the recorder of deeds of each county to provide a plan book or books for the recording of such plans . . . and to maintain an adequate locality index for the same."[40]  The State Highway Law does not define the term "adequate locality index," nor did it vest the Department "with authority or oversight of the various country recorders' offices."  That responsibility lay with individual counties.[41]  Even if this Court finds that PennDOT has a duty to ensure proper indexing, PennDOT maintains that the system used by Washington County should pass muster because it stored plans on microfilm, "loosely organized by municipality."[42]

Bindas' reliance upon *Prouty* is misplaced, PennDOT asserts, not only because that case involved mortgages and deeds (as opposed to highway easements), but also because the relevant document was both defectively recorded and improperly indexed. PennDOT dismisses the authority that Bindas finds persuasive as not squarely

---

interests condemned, as reasonably known to the condemnor, and shall be indexed in the deed indices showing the condemnee set forth in the notice as grantor and the condemnor as grantee.

Act of June 22, 1964, P.L. 84, No. 6, § 404.

[38]  *Id.*, *cmt* (emphasis added).

[39]  PennDOT's Br. at 19 (citing *Pane*, 222 A.2d at 915-16).

[40]  *Id.* at 22 (quoting 36 P.S. § 670-210).

[41]  *Id.* at 22 n.7.

[42]  *Id.* at 23-24.  By statute, microfilm is a permitted method of maintaining recorded and public documents.  *See* 53 Pa.C.S. § 1388; 65 P.S. § 63.1.

addressing the question at issue,[43] and it reads *Sherwood* to conclusively establish that "improper indexing is not fatal to an otherwise properly recorded real property document."[44] Regardless of "Bindas' protestations," or "policy considerations espoused by a litigant" with which a court may sympathize, PennDOT reiterates that a highway easement is condemned upon the approval of the Governor, and that the recording of such condemnation serves as constructive notice to all.[45]

Finally, PennDOT stresses that the courts below found Bindas to have actual and constructive notice of the 1958 Plan.[46] As this Court stated in *Strong*, a "limitation upon an owner's right to claim damages in condemnation cannot begin to run until he has had notice, actual or constructive, that his property has been condemned."[47] Reasonable due diligence, PennDOT claims, "would have revealed that the Carter tract sits within Bindas' property," and therefore would have directed Bindas to the reservation contained in the Carter deed.[48] This reservation existed when Bindas acquired the property in 1977, and he was obligated to "inquire into the surrounding property interests, especially given that

---

[43] *See id.* at 25.

[44] *Id.* at 26 (citing *Sherwood*, 879 A.2d at 181).

[45] *Id.* at 27.

[46] In an appendix to its brief, PennDOT provides maps and figures of the relevant properties, purporting to demonstrate that "the real property interest claimed by Bindas and the Department are not identical, given that both Bindas' alleged fee simple ownership of the 0.872-acre property and the Department's highway easement may exist over the exact same area." *Id.* at 29-30 n.10. Should this Court rule that the 1958 condemnation was not valid, "the extent of Bindas['] ownership over the subject area would properly become an issue before the Board of Property." *Id.* (citing *York OPA, LLC v. Commonwealth*, 181 A.3d 5 (Pa. Cmwlth. 2018)).

[47] 161 A.2d at 380.

[48] PennDOT's Br. at 31-32; *see supra*, n.2 and accompanying text.

the parcel is sandwiched between two state highways and an interstate highway."[49] Because the condemnation and right-of-way on his property was pre-existing and he had notice of it, PennDOT concludes that no *de facto* taking occurred, and suggests that we affirm the Commonwealth Court's order.

Both issues upon which this Court granted *allocatur*—the sufficiency of the 1958 Plan under Section 210, and whether Section 210 imposes a duty upon PennDOT to ensure proper indexing—are purely legal questions. Accordingly, our standard of review is *de novo*, and our scope of review is plenary.[50]

As a preliminary matter, we note the narrow scope of this Opinion. Our ruling upon the first issue impacts only those condemnations that occurred between 1947, when the General Assembly amended the State Highway Law to require recording at the county level, and 1964, when the Eminent Domain Code went into effect. PennDOT explicitly concedes that, after 1964, the Eminent Domain Code requires such "standardized indexing."[51]

Because it informs our analysis of the first issue, we begin with the second issue, and a brief examination of relevant case law. The Commonwealth Court reasoned that "the failure of the County Recorder's Office to properly record the Plan in a plan book nor index the Plan in a locality index does not affect the validity" of the condemnation.[52] Upon review, we find that *Prouty* controls, and that DOH—now PennDOT—had a duty to ensure that the 1958 Plan was properly recorded and indexed.

---

[49]     *Id.* at 32-33.

[50]     *In re Milton Hershey Sch.*, 911 A.2d 1258, 1261 (Pa. 2006).

[51]     PennDOT's Br. at 18.

[52]     *Bindas*, 260 A.3d at 999.

In *Prouty*, a mortgagee brought suit to recover a balance that was due to her. She had executed a mortgage with L.J. Marshall, who mistakenly had been recorded as "S.J. Marshall" in the relevant county records. A later possessor of the property, who had purchased it from Marshall, defended on the grounds that he had searched the mortgage books and found no evidence of existing mortgages under "L.J. Marshall." The lower courts ruled in favor of the mortgagee, but this Court reversed.

We explained that the purpose of the statute mandating the indexing of mortgages was to "give notice to intending purchasers . . . that the conveyance or incumbrance stands in the line of title to the property which it describes."[53] Accordingly, the individual who purchased the property from Marshall "was entitled to rely upon what appeared on the index, and [the index] showed no mortgage given by L.J. Marshall."[54] Because it was the mortgagee's responsibility "to give notice that L.J. Marshall had executed to her a mortgage upon the premises in question," if she fell short in delivering such notice, the Court explained that "the consequence must fall upon her."[55]

A century later, in *Sherwood*, the Court confronted a similar question. First Citizens National Bank purchased a piece of property from J. Joel Turrell. Prior to the sale, it searched the mortgage index and discovered no encumbrances. Afterwards, though, the bank discovered that while the mortgage had been properly recorded, it had been improperly indexed. Turrell was acting as a trustee for Genevieve Van Noy, and the records appeared under her name. First Citizens filed an action to quiet title, and the trial court granted summary judgment in its favor. The Superior Court held that the

---

[53]   *Prouty*, 74 A. at 551.

[54]   *Id.*

[55]   *Id.* at 552.

question of whether First Citizens had conducted a diligent search was a factual one, and it remanded for further development of the record.

First Citizens petitioned for review, which this Court granted. We reversed, holding that because the Turrell mortgage had been properly recorded, per 21 P.S. § 357, "all subsequent purchasers [were] deemed to have constructive notice of it."[56] Even if *Prouty* stood for the proposition that a purchaser of mortgaged premises without actual notice does not have constructive notice where the mortgage is defectively recorded and wrongly indexed, the Court determined that its holding "was effectively abrogated when the Legislature promulgated [21] P.S. § 357."[57]

In 2006, though, the General Assembly enacted 21 P.S. § 358, which provides as follows:

> In order for a document presented for record to the office of a recorder of deeds of a county to be constructive notice for the purpose of this act or the act of May 12, 1925 (P.L. 613, No. 327), entitled "An act regulating the recording of certain deeds, conveyances, and other instruments of writing, and fixing the effect thereof as to subsequent purchasers, mortgagees, and judgment creditors," or otherwise, *the document shall be recorded*, and one of the following conditions shall be satisfied:
>
> > (1) In counties where the act of January 15, 1988 (P.L. 1, No. 1), known as the "Uniform Parcel Identifier Law," applies, the uniform parcel identifier is endorsed or included on the document, and it is *indexed properly* in an index arranged by uniform parcel identifiers.
> >
> > (2) The document is *indexed properly as to the party in all alphabetical indices*. . . . For purposes of this section, the term "document" means a document that is eligible to be recorded in the office of the recorder of deeds, including, but not limited to, deeds, mortgages, quitclaim deeds, memoranda of lease and easements,

---

[56]     *Sherwood*, 879 A.2d at 182.

[57]     *Id.* While the citation to Section 357 appears as "16 P.S. § 357" in the court reporter, we think it beyond cavil that the *Sherwood* majority was referencing 21 P.S. § 357. It used the correct citation throughout its opinion, and 16 P.S. § 357 does not exist.

and includes documents presented for record in person, by mail, electronically or in any other manner.[58]

The legislature's specification that both proper recording and proper indexing are required for a finding of constructive notice therefore restored the state of the law under *Prouty*.

As aforementioned, the Commonwealth Court reasoned that "the failure of the County Recorder's Office to properly record the Plan in a plan book nor index the Plan in a locality index does not affect the validity" of the condemnation.[59] While it is true that the statutory language imposes a duty upon the recorder of deeds, and not PennDOT, to "provide a plan book or books for the recording of such plans . . . and to maintain an adequate locality index for the same,"[60] our reading of that language does not alter our disposition. The verbiage of that sentence—"provide" and "maintain"—makes clear that the county recorder of deeds is responsible simply for offering Section 210 filings a home. By implication, it is for PennDOT to furnish that home (*i.e.*, the plan book and the locality index) with the appropriate documents. Nothing in the record before us indicates that Washington County lacks a plan book or a locality index. Even if that were the case, though, PennDOT could have sought relief in mandamus, compelling the recorder's office to provide them and fulfill its statutory obligation.[61]

Having established that PennDOT and its predecessor had a duty to ensure proper recording and indexing, we are left with the question of whether the condemnation in this case was effective. According to the Commonwealth Court, this Court "has specifically held that Section 210 . . . 'provides that the Governor's approval shall be considered to

---

[58]     21 P.S. § 358 (emphases added); (footnotes and original emphasis omitted).

[59]     *Bindas*, 260 A.3d at 999.

[60]     36 P.S. § 670-210.

[61]     *See, e.g.*, *Morganelli v. Casey*, 646 A.2d 744 (Pa. 1994) (affirming the issuance of a writ of mandamus to direct the Governor to fulfill a statutory mandate); *see also supra* n.9 and accompanying text.

work a condemnation.'"[62]  This conclusion is problematic for at least three reasons.  First, the sentence that the Commonwealth Court cited appears in a section of this Court's opinion in which we relayed the appellees' arguments, and there is no apparent analysis.[63]  Accordingly, to treat this passage as a specific holding warrants significant skepticism.  Second, regardless of whether the paraphrase of Section 210 originated with this Court or with the appellees, a word changes.  The statutory text—the Governor's approval "shall be considered *to be* the condemnation"[64]—became the Governor's approval "shall be considered *to work* a condemnation,"[65] implying effectuation and action.[66]  It goes without saying that this Court must be more careful than that with the plain text of the law.  Third, and perhaps most critically, the language of Section 210 in question continues on:

> The approval of such plan or plans by the Governor shall be considered to be the condemnation of an easement for highway purposes *from all property within the lines marked as required for right of way and the condemnation of an easement of support or protection from all property within the lines marked as required for slopes.*[67]

The thrust of this sentence is thus the *physical scope* of the easement and what would surround it.  It does not shed light upon the standard for compliance with Section 210.

---

[62]     *Bindas*, 260 A.3d at 999 (quoting *Appeal of Commonwealth*, 221 A.2d at 291).

[63]     *See Appeal of Commonwealth*, 221 A.2d at 291 ("Appellees base their contention on a number of factors . . ."); *id.* ("[T]he details shown on the plans, say appellees, indicate conformity . . .").

[64]     36 P.S. § 670-210 (emphasis added).

[65]     *Appeal of Commonwealth*, 221 A.2d at 291.

[66]     If the Governor's approval *works* a condemnation, any condemnation with the Governor's approval is valid.  However, a condemnation with the Governor's approval can *be* while nonetheless suffering from any number of other legal deficiencies.

[67]     36 P.S. § 670-210 (emphasis added).

A point made by Judge Ceisler in dissent below also undermines PennDOT's reading. As she noted, Section 210 does not countenance just any plan with gubernatorial approval, but "such plan," which is defined in the preceding sentence as one that is "filed as a public record in the office of [PennDOT] and a copy thereof . . . recorded in the office for the recording of deeds in the proper county . . . in a plan book or books provided by that county for that purpose."[68] We therefore reap little guidance from the above-quoted portion of Section 210 and from *Appeal of Commonwealth*.

We find *McGowan* to be similarly unhelpful. As a decision of the Commonwealth Court, it is, of course, non-binding upon us. More importantly, that decision is distinguishable from the case *sub judice* for several reasons. In *McGowan*, it was not clear whether the plan at issue was filed pursuant to Section 210 or Section 206 of the State Highway Law;[69] the court did not rule upon the validity of the condemnation because a copy of the plan did not appear in the record;[70] the case concerned owners of record as opposed to subsequent purchasers; and it is again ambiguous whether the passage upon which PennDOT relies[71] constituted part of the court's reasoning, as opposed to a recitation of the parties' arguments.[72] Accordingly, *McGowan* adds little to our analysis.

---

[68] *Bindas*, 260 A.3d at 1006 (Ceisler, J., dissenting) (quoting 36 P.S. § 670-210) (emphases removed).

[69] *See McGowan*, 450 A.2d at 234 ("[W]e are unable to verify . . . whether [the plan] was filed pursuant to Section 206 or Section 210.").

[70] *See id.* ("Since we do not have a copy of the plan before us, we are unable to verify whether the plan was actually filed in Montgomery County"); *id.* ("The problem with DOT's argument . . . is that the record in this case contains no copy of the pertinent plan.").

[71] *See id.* (citing *Pane*, 222 A.2d at 913; *Strong*, 161 A.2d at 380) ("The filing of the plan in the county office for the recording of deeds constitutes constructive notice of the condemnation to all affected landowners.").

[72] *Id.* at 233 ("More specifically, DOT argues . . ."); *id.* at 234 ("DOT contends that such a plan was indeed approved by the Governor . . .").

Notably, the Commonwealth Court majority in this case agreed with the dissents upon one point: the 1958 Plan at issue here was not recorded in a plan book, nor was it indexed in a locality index.[73]  In other words, the requirements of Section 210 were not met.  Had they been, Bindas' title searcher presumably would have had no trouble in locating evidence of the Plan in the Washington County Recorder of Deeds' office.  It would have been in the plan book and the locality index, as opposed to an unlabeled drawer in a filing cabinet,[74] and such proper filing would have relieved the public of the burdens associated with hunting for items that the General Assembly intended to be matters of public record.

We conclude that the failure to comply with the requirements of Section 210 renders the 1958 Plan invalid insofar as it purported to establish an easement upon Bindas' property.  To hold otherwise, this Court would endorse a reading of that provision that reduces its explicit references to recording in a plan book and indexing to mere superfluity.  This we must avoid.[75]

---

[73]    *See Bindas*, 260 A.3d at 999 (noting "the failure of the County Recorder's Office to properly record the Plan in a plan book nor index the Plan in a locality index").

[74]    *See* Notes of Testimony, 9/5/2017, at 35-38, 88.  PennDOT cites two statutes for the proposition that "[m]icrofilm," the material upon which the 1958 Plan was stored, "is a permitted method of maintaining recorded and public documents."  PennDOT's Br. at 23 n.8 (citing 53 Pa.C.S. § 1388; 65 P.S. § 63.1).  In the absence of Section 210, pointing to such authority might be sufficient.  But that provision specifically requires that a copy of the plan be "recorded . . . *in a plan book*."  36 P.S. § 670-210 (emphasis added).  Absent evidence of record that the microfilm here was contained in a plan book, PennDOT's contention here is irrelevant.

[75]    *See Commonwealth v. McCoy*, 962 A.2d 1160, 1168 (Pa. 2009) ("We are not permitted to ignore the language of a statute, nor may we deem any language to be superfluous."); *Commonwealth v. Lobiondo*, 462 A.2d 662, 664 (Pa. 1983) ("It is presumed that every word, sentence or provision of a statute is intended for some purpose and accordingly must be given effect.").

No other factors compel a different conclusion. The Commonwealth Court relied, in part, upon the fact that DOH paid just compensation to the landowners in 1958 and the fact that the Plan was approved by the Governor.[76] While these are necessary conditions to the creation of an easement, a plain reading of the statute leaves no doubt that they are not by themselves sufficient. PennDOT argues that Bindas had actual notice of the 1958 Plan via the chain of title to the Carter property, but, as Judge Ceisler noted, there is no evidence in the record establishing that fact.[77]

This Court finds no occasion to pass upon whatever questions may remain regarding the scope of Bindas' property interest[78] or the availability of damages.[79] We granted *allocatur* to resolve two distinct legal issues, and we therefore leave the resolution of remaining disputes in the capable hands of the trial court.

The order of the Commonwealth Court is vacated and the case is remanded for proceedings consistent with this Opinion.

Chief Justice Todd and Justices Dougherty and Mundy join the opinion.

Justice Donohue files a dissenting opinion.

Justice Brobson did not participate in the consideration or decision of this matter.

---

[76] *Bindas*, 260 A.3d at 999 ("[T]he Department of Highways . . . clearly compensated the owners of the Property for the taking [in 1958] . . ."); *id.* ("[T]he Governor's approval shall be considered to work a condemnation . . ."), *but see supra* nn.62-68 and accompanying text.

[77] *Id.* at 1005 (Ceisler, J., dissenting).

[78] *See* PennDOT's Br. at 29-30.

[79] *See Bindas*, 260 A.3d at 999 ("[T]he right to damages for a condemnation proceeding belongs solely to the owner of the property and does not pass to a subsequent purchaser.") (quoting *Synes Appeal*, 164 A.2d 221, 223 (Pa. 1960)).